153.    Pursuant to 18 U.S.C § 1964(c), this Third-Party Claim seeks relief from Third-Party Respondents Ithaca I, Ithaca II, Fintiklis, Lundgren, Morgan & Morgan and John Does 1-10 (together, the "RICO Respondents") for violation of 18 U.S.C. § 1962(c).

154.    At all relevant times, the RICO Respondents were and are each a "person" within the meaning of 18 U.S.C. §§ 1962(c) and 1961(3).

155.    The RICO Respondents violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs and as further described below.

### *The RICO Enterprise*

156.    At all relevant times, Fintiklis, individually and through his agents, employees and/or representatives, including but not limited to Ithaca I and Ithaca II, together with Lundgren, individually and through his agents, employees and/or representatives, Morgan & Morgan, along with John Does 1-10 and other known and unknown Unit owners and entities relating to the Property, associated in fact with each other so as to constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (the "RICO Enterprise").

157.    At all times relevant to these proceedings, the RICO Enterprise was engaged in, and its activities affected, interstate and foreign commerce, including, *without limitation*, because Fintiklis and Lundgren (i) communicated with each other about their fraudulent scheme; and (ii) made fraudulent misrepresentations and omissions to Plaintiffs using interstate and international wires through (a) telephone calls to and from the United States; and (b) emails to and from the United States that traveled through email servers in the United States.

158.    The RICO Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the members of the RICO Enterprise engaged. Specifically, the members of the RICO Enterprise associated with the RICO Enterprise through

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

their personal involvement in the underlying racketeering offenses as well as by (1) making fraudulent misrepresentations and omissions to Respondents through in-person meetings, telephone calls and emails; (2) fraudulently inducing Respondents to enter into the Consent to Bulk Sale Agreement; (3) promoting the RICO Enterprise's activities and goals to others, including Hotel Unit Owners, and concealing them from Respondents.

159.    The members of the RICO Enterprise associated with one another for the common purpose of injuring Respondents and improperly wresting control of the management of the Property – including its Hotel and Condominium components – from Respondents and their affiliates via unlawful acts alleged above, including an improper takeover of Unit Owner organizations relating to the Property, including Claimant.

160.    The RICO Enterprise began as early as 2010 and continues to this day.

161.    During this time period, in furtherance of the RICO Enterprise, the members of the RICO Enterprise committed numerous predicate acts of racketeering activity, including (1) violations of the wire fraud statute (18 U.S.C. § 1343); and (2) mail fraud statute (18 U.S.C. § 1341).

162.    The members of the RICO Enterprise directly or indirectly benefitted from the fraudulent scheme due to, among other things, receipt by Ithaca I, Ithaca II and Fintiklis of the consent to Bulk Sale from Respondents, resulting in the transfer of 215 Units in the Property on false pretenses (202 Hotel Units and 13 Hotel Amenities Units).

### *The Purpose and Object of the Racketeering Activity*

163.    The members of the RICO Enterprise associated with each other for the common purpose of improperly wresting control of the management of the Property – including its Hotel and Condominium components – from Respondents.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

164.    The members of the RICO Enterprise agreed to engage in a pattern of racketeering activity to further the objectives of the RICO Enterprise.

### *Direction of the RICO Enterprise's Affairs*

165.    The RICO Respondents knowingly conducted or participated in, directly or indirectly, the RICO Enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), 1962(c).

166.    Additionally, each of the RICO Respondents was "employed by or associated with" the RICO Enterprise within the meaning of 18 U.S.C. §§ 1962(c).

167.    The RICO Respondents, individually and through their agents, employees and or/representatives, participated in the operation or management of the RICO Enterprise by, among other things, (i) knowingly and fraudulently aiding, abetting and/or inducing Respondents to consent to the Bulk Sale of 215 Units to Ithaca I and Ithaca II; (ii) making fraudulent misrepresentations and omissions in in-person meetings and emails to Respondents and others concerning the Property.

168.    The fraudulent scheme carried out by members of the RICO Enterprise could not have succeeded without the fraudulent and false statements and omissions of Fintiklis, Ithaca I and Ithaca II, to obtain the consent to Bulk Sale of Units from Respondents, and without the fraudulent and false material statements and omissions by Fintiklis, Lundgren, Ithaca I and II, Morgan & Morgan and John Does 1-10 made at the October 14, 2017 so-called Board meeting of Claimant and Hotel Foundation.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

### The Pattern of Racketeering Activity

169.    In the course of conducting and participating in the RICO Enterprise, the RICO Respondents committed numerous predicate acts of racketeering activity, under 18 U.S.C. §1961(1)(B).

170.    Specifically, the RICO Respondents executed a pattern of predicate acts of racketeering as defined in 18 U.S.C. §§ 1961(1) and 1961(5), in violation of 18 U.S.C. § 1962(c), including but not limited to (a) wire fraud in violation of 18 U.S.C. § 1343; and (b) mail fraud in violation of 18 U.S.C. § 1341.

### Wire Fraud

171.    In furtherance of the RICO Enterprise, as described herein, the RICO Respondents, individually and through their respective agents, employees and/or representatives, used wire communications in interstate or foreign commerce via telephone and email in violation of 18 U.S.C. § 1343.

172.    Specifically, the RICO Respondents communicated about and facilitated the fraudulent scheme through wire facilities including (1) telephone calls to and from the United States; and (2) emails to and from the United States that traveled through servers in the United States.

173.    In addition, Third-Party Respondents Fintiklis, Ithaca I and Ithaca II and John Does 1-10, made fraudulent misrepresentations and omissions to Respondents via (1) telephone calls placed to or from the United States and (2) emails to or from the United States that traveled through servers in the United States.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

*Mail Fraud*

174.    In furtherance of the RICO Enterprise, as described herein, the RICO Respondents, individually and through their respective agents, employees and/or representatives, used the mail for purposes of executing their fraudulent scheme, in violation of 18 U.S.C. § 1341.

175.    Specifically, the RICO Respondents made fraudulent misrepresentations and omissions to Respondents by use of the mail, including those misrepresentations that induced Respondents to consent to the Bulk Sale of Units to Fintiklis and his alter egos, Ithaca I and Ithaca II, in furtherance of the RICO Enterprise.

*Relationship*

176.    The RICO Respondents conducted these and other predicate acts to further the common purpose of the RICO Enterprise to injure Respondents and improperly wrest control of the management of the Property – including its Hotel and Condominium components – from Respondents and their Affiliates via an improper and unlawful takeover of Unit Owner organizations relating to the Property, including Claimant.

177.    These predicate acts of racketeering had the same or similar participants, victims, methods of commission and results and were not related or isolated events.

*Continuity*

178.    The pattern of racketeering activity set forth herein extended over a substantial period of time, beginning as early as 2010 and continuing to this day.

179.    The RICO Respondents intend to continue the fraudulent scheme indefinitely. Indeed, the pattern of racketeering activity was designed to oust Respondents, which Claimant (now under the control and influence of the RICO Enterprise) is purporting to do by proceeding

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

with termination of the HMA despite submitting a dispute concerning default under the HMA for resolution in this proceeding.

180.    The RICO Respondents participation in the fraudulent scheme became a regular way of conducting affairs and will continue absent intervention.

### The RICO Enterprise Directly Caused Injury to Respondents

181.    Respondents are limited liability companies organized in the United States and based in New York, New York.  The RICO Enterprises interactions with Respondents, including the fraudulent misrepresentations and omissions, occurred in or were directed to the United States.

182.    Respondents have been injured as a direct and proximate result of the RICO Enterprise's violations, described above, of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts constituting the pattern of racketeering activity.

183.    Respondents injuries are clear and definite and include, among other injuries, (i) the loss of revenue by virtue of the RICO Enterprise's actions to terminate the HMA; (ii) reputational damage to Respondents' brand as a result of the RICO Enterprise's actions; and (3) being compelled to incur direct and indirect losses and liabilities as a result of the RICO Enterprise's actions.

184.    Respondents became aware of their RICO-related injuries caused by members of the RICO Enterprise on or about October 14, 2017, after Fintiklis purported to install himself on the board of Claimant, by and through the aiding and abetting of Lundgren and the RICO Respondents.

### Respondents' Entitlement to Treble Damages

185.    As a result of the violations of 18 U.S.C. § 1962(c) by the RICO Enterprise, Respondents have suffered substantial damages in an amount to be proved at the hearing in this

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

proceeding, but not less than $50,000,000 [Fifty Million U.S. Dollars], exclusive of interest and attorneys' fees.

186.    The RICO Respondents are jointly and severally liable for the acts of one another and for the acts of the other members of the RICO Enterprise.

187.    Pursuant to 18 U.S.C. § 1964(c), Respondents are entitled to recover treble their damages to $150,000,000 [One Hundred and Fifty Million U.S. Dollars] plus interest, costs, and attorneys' fees incurred by reason of the RICO Respondents' violations of 18 U.S.C. § 1962(c).

### SECOND THIRD-PARTY CLAIM
### CONSPIRACY TO VIOLATE RICO, 18 U.S.C. § 1962(d)
*(against Ithaca I, Ithaca II, Fintiklis, Lundgren and Morgan & Morgan)*

188.    Respondents repeat and reallege the foregoing as if fully set forth at length herein.

189.    In violation of 18 U.S.C. § 1962(d), the RICO Respondents knowingly conspired with each other to violate 18 U.S.C. § 1962(c).

190.    The object of the conspiracy included, but was not limited to, unlawfully wresting control of the management of the Property – including its Hotel and Condominium components – from Respondents and their affiliates via an improper takeover of Unit Owner organizations relating to the Property, including Claimant.

191.    At all relevant times, Fintiklis, individually and through his agents, employees and/or representatives, including but not limited to Ithaca I and Ithaca II, together with Lundgren, individually and through his agents, employees and/or representatives, and Morgan & Morgan, along with John Does 1-10 and other known and unknown Unit owners and entities relating to the Property, combined and agreed to perform a criminal or unlawful act, or a lawful act by criminal or unlawful means.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

192. The RICO Respondents, individually and through their agents, employees and or representatives, objectively manifested agreement to the commission of substantive RICO violations and to the commission of two or more predicate acts of racketeering through participation in the conduct and affairs of the RICO Enterprise.

193. The RICO Respondents' agreement to engage in a pattern of racketeering activity is manifested by the racketeering offenses committed by them as alleged above.

194. The RICO Respondents committed overt acts to achieve the purpose of the conspiracy, including, but not limited to, (1) making fraudulent misrepresentations and omissions to Respondents; (2) purporting to call a meeting of Hotel TOC Foundation and Claimant under false pretenses; and (3) causing Claimant to take action to terminate the HMA without lawful grounds.

195. As described above, by committing numerous acts of wire fraud and mail fraud in furtherance of the RICO Enterprise, the RICO Respondents engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. §§ 1961(5) and 1962(c).

196. The RICO Respondents knew that their acts in furtherance of the conspiracy were part of a pattern of fraudulent activity.

197. As a direct and proximate result of the RICO Respondents' participation in a conspiracy to violate 18 U.S.C. § 1962(c), Respondents have suffered substantial damages in an amount to be proven at the hearing in this matter, but not less than $50,000,000 [Fifty Million U.S. Dollars], exclusive of interest and attorneys' fees.

198. As described above, Respondents suffered domestic U.S. injuries.

199. The RICO Respondents are jointly and severally liable for the acts of one another and for the acts of the other members of the RICO Enterprise.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

200.    Pursuant to 18 U.S.C. § 1964(c), Respondents are entitled to recover treble their damages, $150,000,000 [One Hundred and Fifty Million U.S. Dollars] plus interests, costs, and attorneys' fees incurred by reason of the RICO Respondents' violations of 18 U.S.C. § 1962(d).

### THIRD THIRD-PARTY CLAIM
### FRAUD
*(against Fintiklis, Ithaca I and Ithaca II)*

201.    Respondents repeat and reallege the foregoing as if set forth at length herein.

202.    Ithaca I and Ithaca II are parties to the Consent to Bulk Sale Agreement, along with Respondents. Fintiklis so dominates and controls Ithaca I and II such that they are his alter egos and he is personally, jointly and severally liable for their wrongs.

203.    In the Consent to Bulk Sale Agreement, as well as discussions leading up to it, Ithaca I and Ithaca II made statements, by and through Fintiklis, that they would take no actions adverse to the interests of Respondents in operating the Hotel.

204.    Indeed, in Section 3(D) of the Consent to Bulk Sale Agreement, Ithaca I and Ithaca II (by and through Fintiklis), as Purchaser, agreed:

> Purchaser shall not, directly or indirectly through any Affiliates or otherwise: (w) take (or refrain from taking) any action (including any legal action) that would interfere with or undermine the rights or obligations of Operator under and in respect of any of the Hotel Agreements, (x) exercise its vote with respect to any of the Hotel Units in any Owners Meeting or other constituent body of the P.H. TOC (or any of its components), including without limitation, Hotel TOC Inc., in any manner which is adverse to the interests of Operator and/or its Affiliates under and in respect of any of the Hotel Agreements, (y) take (or refrain from taking) any action (including any legal action) that could materially damage the relationship between Operator, its Affiliates and any other Person or (z) make, issue, solicit or endorse any statement that would damage or undermine the reputation of Operator or any of its Affiliates.

205.    At the time of those statements were made, and prior to those statements being made, Fintiklis, and Ithaca I and II intended to, and did, take actions directly adverse to the interests of Respondents in operating the Hotel, rendering such statements false at the time they were made.

52

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

206.   Indeed, Fintiklis subsequently caused Ithaca I and Ithaca II to vote its Units to terminate the HMA, as part of a fraud and RICO scheme and conspiracy to, *inter alia*, wrest control of the management of the Hotel.

207.   At the time Fintiklis made those statements on behalf of Ithaca I and Ithaca II they were knowingly false and made with an intent to deceive and defraud Respondents such that they would rely upon them to their detriment, which they did.

208.   Respondents reasonably relied on those knowingly false statements to their detriment and substantial damages resulted therefrom.

209.   Accordingly, Respondents are entitled to an award of damages in an amount to be proven at the hearing in this proceeding and in no event less than $50,000,000 [Fifty Million U.S. Dollars], exclusive of interest and attorneys' fees.

## FOURTH THIRD-PARTY CLAIM
### FRAUD
*(against Fintiklis, Ithaca I and Ithaca II)*

210.   Respondents repeat and reallege the foregoing as if set forth at length herein.

211.   The facts set forth above at paragraphs 66 through 119 set forth numerous knowingly false statements of facts and material omissions of material fact which Fintiklis, Ithaca I and Ithaca II made and/or omitted concerning Respondents and which they intended for Respondents to rely upon to their detriment and which Respondents did.

212.   Without limitation thereof, Fintiklis and Ithaca I and II were fully aware of their promises under Section 3(d) of the Consent to Bulk Sale Agreement, promises which they made before and after the execution of the Agreement. Thereafter, on October 3, 2017, Fintiklis emailed all Hotel Unit Owners requesting their attendance "at a meeting of the beneficiaries of Hotel TOC

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Foundation on 14 October 2017," declaring that it was an opportunity to meet as many Hotel Owners as possible and "hear [Hotel Unit Owners'] thoughts and ideas."

213. In response to Fintiklis's email, Respondents contacted Fintiklis directly to remind him of his obligations under the Consent to Bulk Sale Agreement—specifically the covenants and acknowledgements as laid out in Section 3, quoting subsections (D)–(E). Respondents further requested that its General Manager of the Hotel attend the meeting, and that Fintiklis notify Respondents of any future plans to convene Hotel Unit Owners.

214. Fintiklis responded to Respondents, hoping to lull and defraud Respondents with false comforting statements allegedly confirming that he was well aware of the provisions quoted, and falsely representing that the meeting was merely "an informal lunch" that he put together because he was being approached by Hotel Unit Owners and thought that a "lunch meeting" would be a good way to meet everyone. Fintiklis even falsely stated that he agreed to have the Operator's representative and General Manager in attendance.

215. Fintiklis made knowingly false representations and material omissions of material fact because, *inter alia*, the "lunch meeting" was not intended to "meet everyone," but rather was part of a fraud and RICO scheme designed to usurp unlawful control of Hotel TOC Foundation and Claimant by holding bogus meetings for unlawful exercise of votes intended to harm Respondents and cause Claimant to terminate the HMA.

216. The subject of any prospective meeting of Claimant or Hotel TOC Foundation is plainly material to Respondents, who operate the Hotel.

217. Fintiklis made knowing false statements and knowing material omissions of material facts with an intent that Respondents would reasonably rely thereon to their detriment.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

218.    Respondents reasonably relied on Fintiklis's statements by, among other things, not taking immediate action to protect their rights under the Consent to Bulk Sale Agreement and HMA.

219.    As a result of Fintiklis's fraud, Respondents have been damaged in an amount to be proven at the hearing, but not less than $50,000,000 [Fifty Million U.S. Dollars], exclusive of interest and attorneys' fees.

## FIFTH THIRD-PARTY CLAIM
### FRAUDULENT INDUCEMENT
*(against Fintiklis, Ithaca I and Ithaca II)*

220.    Respondents repeat and reallege the foregoing as if set forth at length herein.

221.    Ithaca I and Ithaca II are parties to the Consent to Bulk Sale Agreement, along with Respondents.

222.    In the discussions leading up to the Consent to Bulk Sale Agreement, including in an earlier version of the agreement, Ithaca I and Ithaca II made knowingly false statements promises and representations, by and through Fintiklis, that they would take no actions, including the exercise of voting rights and even legal actions, which were or could be in any manner adverse to the interests of Respondents under the HMA in their operation of the Hotel.

223.    At the time those knowingly false statements and representations were made, and even before they were made, Fintiklis – and, by virtue of his domination and control over his alter egos – Ithaca I and Ithaca II, intended to and did take actions directly adverse to the interests of Respondents under the HMA and in the operation of the Hotel and in direct contradiction to the promises, statements and representations they made.

224.    Indeed, Fintiklis unlawfully and in breach caused Ithaca I and Ithaca II to vote its Units to terminate the HMA.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

225.    Fintiklis knowingly made those false statements on behalf of Ithaca I and Ithaca II with an intent to deceive Respondents and with the intent that Respondents would reasonably rely upon them to their detriment, and specifically to induce Respondents into granting their consent to the sale of 215 Units in the Hotel to Ithaca I and Ithaca II and to enter into the Consent to Bulk Sale Agreement.

226.    Respondents reasonably relied on those statements to their detriment and substantial damages resulted therefrom.

227.    Accordingly, Respondents are entitled to an award of damages in an amount to be proven at the hearing in this proceeding but not less than $50,000,000 [Fifty Million U.S. Dollars], exclusive of interest and attorneys' fees.

**SIXTH THIRD-PARTY CLAIM**
**FRAUDULENT CONCEALMENT**
*(against Fintiklis, Ithaca I and Ithaca II)*

228.    Respondents repeat and reallege the foregoing as if set forth at length herein.

229.    On October 3, 2017, Fintiklis emailed all Hotel Unit Owners requesting their attendance "at a meeting of the beneficiaries of Hotel TOC Foundation on 14 October 2017," declaring that it was an opportunity to meet as many Hotel Owners as possible and "hear [Hotel Unit Owners'] thoughts and ideas."

230.    Fintiklis acts for a beneficiary of Hotel TOC Foundation by virtue of his interests in Ithaca I and Ithaca II, which own Units in the Hotel. Upon information and belief, Fintiklis has dominated and controlled Ithaca I and Ithaca II at all relevant times. Ithaca I and Ithaca II are mere devices for Fintiklis to further his own personal business. Specifically, Fintiklis used Ithaca I and Ithaca II in furtherance of his fraudulent scheme to take control of Hotel TOC, Inc. and Hotel TOC Foundation.

56

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

231.    In response to Fintiklis's email, Respondents contacted Fintiklis directly to remind him of his obligations under the Consent to Bulk Sale Agreement—specifically the covenants and acknowledgements as laid out in Section 3, quoting subsections (D)–(E). Respondents further requested that its General Manager of the Hotel attend the meeting, and that Fintiklis notify Respondents of any future plans to convene Hotel Unit Owners.

232.    Under the Consent to Bulk Sale Agreement, Fintiklis, as the authorized representative of Ithaca I and Ithaca II, had a contractual duty to not take actions adversely affecting the interests of Respondents in operating the Hotel.

233.    In abrogation of that duty, however, Fintiklis concealed his true purpose in calling the October 14 meetings, stating instead that the meeting was an informal lunch that he put together because he was being approached by Hotel Unit Owners and thought that a "lunch meeting" would be a good way to meet everyone. Fintiklis agreed to have the General Manager in attendance.

234.    Fintiklis's concealment of his true purpose was a material omission to Respondents in violation of his duties under the Consent to Bulk Sale Agreement.

235.    Respondents reasonably relied on Fintiklis's omissions and false statement by, among other things, not taking immediate action to protect their rights under the Consent to Bulk Sale Agreement and HMA.

236.    As a result of Fintiklis's fraudulent concealment, Respondents have been damaged in an amount to be proven at the hearing, but not less than $50,000,000 [Fifty Million U.S. Dollars], exclusive of interest and attorneys' fees.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

### SEVENTH THIRD-PARTY CLAIM
### BREACH OF THE HMA
*(against Ithaca II and Fintiklis)*

237.    Ithaca II, as the alleged "successor" to Newland International Properties Corp., along with Claimant and Respondents, are party to the HMA, which has an initial term of 20 years. Absent an Event of Default or performance-related issues under Section 5.3 (not raised by Claimant in its Notice of Default), the HMA may not be terminated.

238.    No such Event of Default exists. Accordingly, Claimant's service of Notice of Default breaches the HMA.

239.    Despite the absence of an Event of Default, Ithaca II, as part of the unlawful fraud and RICO scheme of Fintikilis, Lundgren and Third-Party Respondents, unlawfully voted its Units to purportedly replace the board of Claimant and cause Claimant to issue the Notice of Default.

240.    Moreover, subsequent to commencing this arbitration, Claimant -- under the unlawful control and domination of Fintiklis and Third-Party Respondents – notified Respondents of its intention to terminate Respondents as Hotel Operator and remove Respondents from the Hotel property.  Such threats and repudiations of obligations blatantly violates the HMA and Operator's rights thereunder.

241.    Specifically, Section 5.2.4 of the HMA provides:

> Any termination notice given pursuant to Section 5.2.2, 5.3 or 5.4 **shall not result in the termination of this Agreement if a bona fide dispute with respect to any alleged Event of Default** or other event entitling a party to terminate this Agreement **has arisen between the parties and such dispute has been submitted to resolution pursuant to Section 9.1.**

242.    A bona fide dispute clearly exists between Claimant and Respondents concerning the existence of an Event of Default (*see, e.g., ¶¶ 146 - 150 supra*) as well as the authority of those

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

purporting to act on Claimant's behalf and such disputes have been submitted for resolution in this proceeding.

243.    Accordingly, Claimant's persistence – by and through Fintiklis and his alter egos Ithaca I and Ithaca II – in proceeding to terminate Respondents is a material and unequivocal repudiation and breach of the HMA including, but not limited to, Section 5.2.4.

244.    But for Ithaca II's actions in violation of its obligations under the HMA and the Consent to Bulk Sale Agreement, Claimant would not have breached the HMA, causing Respondents to suffer damages in an amount to be proven at the hearing in this proceeding, but not less than $50,000,000 [Fifty Million U.S. Dollars], exclusive of interest and attorneys' fees.

245.    Fintiklis has dominated and controlled Ithaca II at all relevant times.  Ithaca II is a mere alter ego device for Fintiklis to further his own personal business and interests.  Specifically, Fintiklis used Ithaca II in furtherance of a fraud and RICO scheme to take control of Hotel TOC, Inc. and Hotel TOC Foundation, resulting in Claimant's breach of the HMA.  Ithaca II and Fintiklis are jointly and severally liable to Respondent for breach of the HMA.

## EIGHTH THIRD-PARTY CLAIM
### TORTIOUS INTERFERENCE WITH THE HMA
*(against Ithaca I, Ithaca II, Lundgren and Fintiklis)*

246.    Respondents repeat and reallege the foregoing as if fully set forth at length herein.

247.    Respondents, along with Ithaca II, are parties to the HMA.

248.    Ithaca I, Ithaca II, Lundgren and Fintiklis are aware and have knowledge of the HMA and its terms.  Indeed, Fintiklis, Ithaca I and Ithaca II are party to the Consent to Bulk Sale Agreement, which explicitly incorporates the HMA by reference. Moreover, Lundgren, by virtue of the Lundgren Settlement Agreement has full knowledge of the HMA and all Hotel-related agreements and is charged with knowledge of all of the terms therein.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

249. Through their wrongful conduct, Ithaca I, Ithaca II, Lundgren and Fintiklis intentionally interfered with Respondents' rights under the HMA, including by unlawfully causing Claimant to serve a sham Notice of Default and take steps to terminate the HMA.

250. Claimant's Notice of Default and steps to terminate the HMA are a material breach of the terms of the HMA.

251. Claimant's breach of the HMA was caused by the intentional interference of Ithaca I, Ithaca II, Lundgren and Fintiklis.

252. Lundgren, Fintiklis and Ithaca I and II agreed and conspired to oust Respondents as Hotel Operator by any means necessary, including those tortious or otherwise illegal. Lundgren and Fintiklis and their alter ego entities, through the unlawful voting of their entities' respective Hotel Units, took overt action in furtherance of their agreement and conspiracy. Accordingly, Lundgren, Fintiklis, Ithaca I and Ithaca II are jointly and severally liable for their tortious conduct with respect to the HMA.

253. Respondents have been damaged by the tortious interference of Ithaca I, Ithaca II, Lundgren and Fintiklis, which precipitated the material breach of the HMA, in an amount to be determined at the hearing in this matter, but not less than $50,000,000 [Fifty Million U.S. Dollars], exclusive of interest and attorneys' fees.

### NINTH THIRD-PARTY CLAIM
### BREACH OF CONSENT TO BULK SALE AGREEMENT
*(against Ithaca I, Ithaca II and Fintiklis)*

254. Respondents repeat and reallege each and every allegation as if fully set forth at length herein.

255. The Consent to Bulk Sale Agreement was executed on February 15, 2017, by Respondent Trump Panama Hotel Management LLC and the alter egos of Fintiklis, Ithaca I, and

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Ithaca II with Fintiklis acting as sole signatory for Ithaca I and Ithaca II, the alter egos which he dominates and controls.

256.    The Consent to Bulk Sale Agreement, and the promises made therein by Ithaca I and II and their alter ego Fintiklis, were reasonably relied upon by Respondents to their detriment, and are enforceable promises under law.

257.    Operator performed all of its obligations and duties under the Consent to Bulk Sale Agreement.

258.    Ithaca I and Ithaca II, as controlled and dominated by Fintiklis, failed to deliver the central material consideration they promised to Respondents under the Consent to Bulk Sale Agreement. Specifically, in material breach of paragraph 3(D), Ithaca I and Ithaca II (by and through Fintiklis's actions) willfully, completely and materially interfered with and undermined Operator's and Respondents' rights under the HMA by – without limitation of the facts set both above – fraudulently purporting to usurp control of the Claimant's board, and materially interfering with Respondents' rights as Hotel Operator.

259.    In addition, Ithaca I and II and Fintiklis breached paragraph 3(F) through Fintiklis' actions in seeking and purportedly accepting appointment to the Foundation Council and the Board of Claimant.

260.    Through these actions, Ithaca I and Ithaca II and Fintiklis breached its covenants in paragraph 3, which were material terms of the Consent to Bulk Sale Agreement.

261.    Fintiklis has dominated and controlled Ithaca I and Ithaca II at all relevant times. Ithaca I and Ithaca II are alter ego vehicles through which Fintiklis advances his personal interests. Fintiklis used Ithaca I and Ithaca II in furtherance of his fraudulent scheme to take control of Hotel

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

TOC, Inc. and Hotel TOC Foundation.  Accordingly, Fintiklis is jointly and severally liable with Ithaca I and Ithaca II for breach of the Consent to Bulk Sale Agreement.

262.   Respondents have been damaged by the breach of the Consent to Bulk Sale Agreement in an amount to be determined at the hearing in this matter, but not less than $50,000,000 [Fifty Million Dollars] exclusive of interests and attorneys' fees, and the Third-Party Respondents Ithaca I, Ithaca II and Fintiklis are jointly and severally liable therefor.

**TENTH THIRD-PARTY CLAIM**
**TORTIOUS INTERFERENCE WITH THE CONSENT TO BULK SALE AGREEMENT**
*(against Lundgren)*

263.   Respondents repeat and reallege the foregoing as if fully set forth at length herein.

264.   Respondents, along with Ithaca I and Ithaca II, are parties to the Consent to Bulk Sale Agreement.

265.   Upon information and belief, Lundgren knew of the Consent to Bulk Sale Agreement, such agreement being an instrumentality of the fraud and unlawful RICO scheme enacted by Lundgren, Fintikilis and the Third-Party Respondents to improperly wrest control of the management of the Hotel and violate Operator's rights.

266.   Through wrongful conduct, Lundgren intentionally interfered with Respondents' rights under the Consent to Bulk Sale Agreement, including by causing and inducing, and conspiring with Fintikilis, Ithaca I and Ithaca II, to violate the covenant of non-interference under the Consent to Bulk Sale Agreement and otherwise cause the breach of the Consent to Bulk Sale Agreement.

267.   The tortious acts of Fintiklis, Ithaca I and Ithaca II – including the votes of their Units at the two sham "informal lunch" meetings on October 14, 2017 – are material breaches of the Consent to Bulk Sale Agreement.

268.    The breach by Fintiklis, Ithaca I and Ithaca II of the Consent to Bulk Sale Agreement was aided, abetted and caused by the intentional interference of, and conspiracy with Lundgren.

269.    Respondents have been damaged by the tortious interference of Lundgren, which precipitated the material breach of the Consent to Bulk Sale Agreement, in an amount to be determined at the hearing in this matter, but not less than $50,000,000 [Fifty Million U.S. Dollars], exclusive of interest and attorneys' fees.

<u>ELEVENTH THIRD-PARTY CLAIM</u>
<u>BREACH OF THE LUNDGREN SETTLEMENT AGREEMENT</u>
*(against Owners Meeting and Lundgren)*

270.    Respondents repeat and reallege each and every allegation as if fully set forth at length herein.

271.    The Lundgren Settlement Agreement is a binding contract between the Owners Meeting, the Board of Directors of the Owners Meeting, and Trump Panama Condominium Management LLC, an Affiliate of Respondents.

272.    The Lundgren Settlement Agreement expressly "inures to the benefit of and is binding upon each of the Parties hereto and their respective agents, representatives, executors, administrators, trustees, personal representatives, partners, directors, officers, shareholders, agents, attorneys, insurers, employees, representatives, predecessors, successors, heirs and assigns." (Lundgren Settlement Agreement, ¶ 11.)

273.    The Lundgren Settlement Agreement is binding upon Lundgren both individually and as a then-director of Owners Meeting.  In fact, Lundgren was a signatory of the Lundgren Settlement Agreement, and the Lundgren Settlement Agreement specifically addressed his conduct both "as a director or individually."

63
THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

274.    The Hotel Operator is specifically referenced in the Lundgren Settlement Agreement as a party for whose benefit paragraph 6 – set forth below – exists; Operator is an intended third-party beneficiary of the Lundgren Settlement Agreement.

275.    Owners Meeting and Lundgren have breached their obligations under the Lundgren Settlement Agreement.  Specifically, Owners Meeting and Lundgren breached paragraph 6 of the Lundgren Settlement Agreement, whereby they promised that:

> neither the P.H. TOC nor any current or future Board of Directors nor any current or future member of the Board of Directors (including, without limitation, **Mr. Lundgren,** Ms. Perez, Mr. Fraser, Mr. Soloway and Mr. McGowan), **whether acting in their capacity as a director or individually,** shall, at any time, directly or indirectly, take any action (including, without limitation, exercising any voting rights as members of the Board of Directors) **which could reasonably be expected to interfere or compete with the duties, services, functions, management responsibilities . . ., rights and responsibilities of Hotel Operator,** whether under the Hotel Management Agreement or otherwise, or which could reasonably be expected to damage the relationship between Hotel Operator and any parties with an interest in the Building.

Lundgren Settlement Agreement, ¶ 6 (emphases added).

276.    Owners Meeting and Lundgren breached paragraph 6 of the Lundgren Settlement Agreement through, without limiting the allegations above, Lundgren's actions and conduct on October 14, 2017 and by aiding and abetting, and conspiring with Fintiklis and the Third Party Respondents to take unlawful control of the Board of Claimant and Hotel Foundation, including, but not limited to, Lundgren unlawfully voting his alleged Hotel Units to support the efforts of Fintiklis and the Third Party Respondents to injure Operator's rights and terminate the HMA in breach of contract and violation of law.

277.    Respondents have been damaged by the Owners Meeting's and Lundgren's material breach of the Lundgren Settlement Agreement in an amount to be determined at the hearing in this

64

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

matter, but not less than $50,000,000 [Fifty Million U.S. Dollars], exclusive of interest and attorneys' fees.

## TWELFTH THIRD-PARTY CLAIM
## TORTIOUS INTERFERENCE WITH THE LUNDGREN SETTLEMENT AGREEMENT
### (against Fintiklis, Ithaca I and Ithaca II)

278.   Respondents repeat and reallege the foregoing as if fully set forth at length herein.

279.   The Lundgren Settlement Agreement is a binding contract between the Owners Meeting, the Board of Directors of the Owners Meeting, and Trump Panama Condominium Management LLC, and Affiliate of Respondents.

280.   The Lundgren Settlement Agreement "inure[d] to the benefit of and [was] binding upon each of the Parties hereto and their respective agents, representatives, executors, administrators, trustees, personal representatives, partners, directors, officers, shareholders, agents, attorneys, insurers, employees, representatives, predecessors, successors, heirs and assigns." (Lundgren Settlement Agreement, ¶ 11.)

281.   Respondents, as the Hotel Operator is specifically referenced in the Lundgren Settlement Agreement in paragraph 6 thereof and are intended third party beneficiaries of the Lundgren Settlement Agreement.

282.   Fintiklis, Ithaca I and Ithaca II are aware and have knowledge of the Lundgren Settlement Agreement, a breach of such agreement being an instrumentality of the fraud and unlawful RICO scheme and conspiracy enacted by Lundgren, Fintiklis and the Third-Party Respondents to improperly wrest control of the management of the Hotel.

283.   Through their wrongful conduct, Ithaca I, Ithaca II and Fintiklis intentionally interfered with Respondents' rights under the Lundgren Settlement Agreement, including by

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

causing and inducing Lundgren to violate and breach the covenant of non-interference under the Lundgren Settlement Agreement.

284.    Lundgren's actions, including the vote of his alleged Units (all of which he obtained in violation of Operator's rights and for which Operator sues herein below) on October 14, 2017, are a material breach of the Lundgren Settlement Agreement.

285.    Lundgren's breach of the Lundgren Settlement Agreement was caused by the intentional interference of Ithaca I, Ithaca II and Fintiklis.

286.    Respondents have been damaged by the tortious interference of Ithaca I, Ithaca II and Fintiklis, which precipitated the material breach of the Lundgren Settlement Agreement, in an amount to be determined at the hearing in this matter, but not less than $50,000,000 [Fifty Million U.S. Dollars], exclusive of interest and attorneys' fees.

## THIRTEENTH THIRD-PARTY CLAIM
### DECLARATORY JUDGMENT
*(against Hotel Foundation)*

287.    Respondents repeat and reallege the foregoing as if set forth at length herein.

288.    Hotel Foundation is the sole shareholder of Claimant.

289.    As discussed above, some meeting of Hotel Foundation was purportedly called by Fintiklis and/or his alter egos or one or more of the Third-Party Respondents for October 14, 2017. The notice of the October 14, 2017 meeting was not sent to members of the Council of the Hotel TOC Foundation as required by its charter.

290.    Rather, Fintiklis proceeded with an alleged meeting without the Council, and without its President and Legal Representative, and instead Fintiklis falsely assumed the role of purported President and Secretary.

66

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

291.    During this purported meeting of Hotel Foundation, the composition of the Council was purportedly changed by removing certain members and installing Fintiklis and others under his control, in order to permit Fintiklis to purport to install himself on the board and "authorized representative" of Claimant.

292.    Fintiklis's subsequent self-installation on the Board of Claimant was simultaneous with the Notice of Default and the commencement of this proceeding which he and the Third-Party Respondents orchestrated.

293.    Thus, Respondents have an actual controversy with Hotel Foundation that is ripe for adjudication.

294.    Specifically, the purported October 14, 2017 meeting of Hotel Foundation violated law, and the acts that occurred therein should be declared null and void and of no effect.  The October 14, 2017 meeting of the Hotel Foundation violated its Articles of Incorporation by failing to provide notice to all Beneficiaries and failing to achieve at least 75% participation of Beneficiaries for the decisions undertaken.  Because of this failure, Hotel Foundation's actions with respect to the composition of the Board of Claimant are null and void, and Claimant's subsequent actions are *ultra vires*. Even assuming *arguendo*, that meeting had been called on proper Notice and even assuming 75% of those beneficiaries with valid ownership and valid voting rights had been exercised – which neither fact exists or occurred – Third Party Respondents Ithaca I and II, and Fintiklis and Lundgren and the Lundgren-related affiliates and entities had zero right to vote or cause to be voted upon any matters undermining the Operator or averse to Operator's interests under the Consent to Bulk Sale Agreement and the Lundgren Settlement Agreement .

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

295.    For the reasons set forth above, Respondents are entitled to a declaration that the events purporting to take place at the improperly-noticed October 14, 2017 meeting of Hotel Foundation are null and void.

### FOURTH COUNTERCLAIM/FOURTEENTH THIRD-PARTY CLAIM
### DECLARATORY JUDGMENT & PERMANENT INJUNCTION
*(against Claimant, Hotel TOC Foundation, Fintiklis, Ithaca I, Ithaca II and Lundgren)*

296.    Respondents repeat and reallege the foregoing as if set forth at length herein.

297.    Fintiklis, by and through Ithaca I and Ithaca II, and in concert with Lundgren, purport to act on behalf of Claimant and Hotel TOC Foundation as a result of actions taken at improperly-called meetings of Claimant and Hotel TOC Foundation on October 14, 2017.

298.    The actions taken at the improperly-called meetings by Fintiklis, Ithaca I, Ithaca II and Lundgren violate agreements that those Third-Party respondents had concerning the Operator. Specifically, actions taken by Fintiklis, Ithaca I and Ithaca II violate the Consent to Bulk Sale Agreement (*see* ¶¶ 263 - 269), while those taken by Lundgren violate the Lundgren Settlement Agreement (*see* ¶¶ 270 - 277).

299.    As discussed above, the actions purportedly taken at the October 14, 2017 meetings of Claimant and Hotel TOC Foundation are *ultra vires* and contrary to law.

300.    Thus, a real and live controversy exists between Respondents and Claimant, Hotel TOC Foundation, Fintiklis, Ithaca I, Ithaca II and Lundgren that is ripe for adjudication.

301.    Specifically, the purported October 14, 2017 meeting of Hotel TOC Foundation violated law, and the acts that occurred therein should be declared null and void and of no effect. First, because the actions that took place at the October 14, 2017 meeting of Claimant are predicated on the improper meeting of Hotel TOC Foundation, which, as described above, was ineffective. (¶¶ 287 – 295). Moreover, the voting of Units owned by Ithaca I and Ithaca II for the actions taken at the October 14, 2017 meetings of Claimant and Hotel TOC Foundation violate the

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Consent to Bulk Sale Agreement and are void. The voting of Units owned by Lundgren violate the Lundgren Settlement Agreement, as well as the Co-Ownership Regulations and the HMA, by virtue of the lack of Operator consent given to Lundgren's holding of more than 10 Units at the Hotel.

302. For the reasons set forth above, Respondents are entitled to a declaration that:

    a. the actions taken by Fintiklis, Ithaca I and Ithaca II at the October 14, 2017 meetings violate the Consent to Bulk Sale Agreement;

    b. the actions taken by Lundgren at the October 14, 2017 meetings violate the Lundgren Settlement Agreement;

    c. Lundgren's ownership of more than 10 Units violates the Co-Ownership Regulations and HMA;

    d. the Notice of Default issued by Fintiklis as the "authorized representative" of Claimant and Hotel TOC Foundation is null and void, as Fintiklis is not the authorized representative of Claimant or Hotel TOC Foundation; and

    e. there has been no termination of the HMA, as any actions purporting to terminate it have been *ultra vires* and/or unauthorized.

303. The actions of Fintiklis, Ithaca I, Ithaca II and Lundgren demonstrate gross disregard for contractual obligations and the rule of law. As such, Respondents are additionally entitled to and hereby request the entry of a permanent injunction enjoining Claimant, Hotel TOC Foundation, Fintiklis, Ithaca I, Ithaca II and Lundgren from:

    a. taking any further action on the basis of the authority to act on behalf of Claimant and/or Hotel TOC Foundation based on the October 14, 2017 meetings of Claimant and Hotel TOC Foundation;

    b. taking any actions, including the vote of any Units, contrary to the interests of Operator in its maintenance of the Hotel, consistent with pre-existing contractual obligations; and

    c. pursuing or taking any action to pursue the termination of the HMA on the basis of the actions at the October 14, 2017 meetings of Claimant or Hotel TOC Foundation.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

## FIFTEENTH THIRD-PARTY CLAIM
## BREACH OF THE HMA/CO-OWNERSHIP REGULATIONS
### *(against Lundgren)*

304.    Respondents repeat and reallege the foregoing as if set forth at length herein.

305.    Lundgren, by and through 35 distinct entities, is the alleged owner 50 Hotel Units

pursuant to, inter alia, the Co-Ownership Regulations.

306.    Article 75(D)(4) of the Co-Ownership Regulations provides:

No **OWNER** of a **HOTEL UNIT** may subdivide his / her **HOTEL UNIT**; no
**OWNER** may purchase, possess or control, directly or indirectly through affiliates,
related parties or in any other way, more than ten (10) **HOTEL UNITS**. For these
effects, ownership or control of a **HOTEL UNIT** shall be considered to exist if said
**HOTEL UNIT** belongs, directly or indirectly to the **OWNER**, a family member
of the **OWNER**, any entity where the **OWNER** or the **OWNERS** family members
may have an interest or are partners, or any partner, affiliate, controlling company
or affiliate of any of the above.

307.    The Co-Ownership Regulations further provide, in Article 1(C) that when the "**CO-**

**OWNERSHIP REGULATIONS** or the law, do not expressly provide an applicable provision to

a particular or specific case that is intended to be analyzed, the following principles shall apply . .

. The terms and conditions of the **LICENSE AGREEMENT**, the **HOTEL MANAGEMENT**

**AGREEMENT** and the **MANAGEMENT AGREEMENT OF P.H. TOC.**"

308.    Respondents, as Hotel Operator and Licensor, are intended third-party beneficiaries

of the Co-Ownership Regulations and therefore have standing to pursue claims relating thereto.

309.    Respondents, as Hotel Operator, have never given written consent to Lundgren's

ownership of more than 10 Hotel Units as limited by the Co-Ownership Regulations.

310.    Accordingly, Lundgren, by owning, directly or indirectly, more than 10 Hotel

Units, is in breach of his obligations under the Co-Ownership Regulations and HMA; moreover,

any votes which Lundgren purports to have exercised, directly or indirectly, in excess of 10 --

even assuming *arguendo* that a lawful Shareholder meeting had been lawfully called and proper

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

notice given and that Lundgren had not been a RICO Respondent involved in a fraud and RICO scheme (which is not the case) -- are null and void and Respondents are entitled to a Declaratory Judgment to that effect.

311. Lundgren's breach of the Co-Ownership Regulations/HMA have caused Respondents substantial damage in an amount to be proven at the hearing in this proceeding but not less than $50,000,000 [Fifty Million U.S. Dollars], exclusive of interest and attorneys' fees.

## **RESERVATION OF RIGHTS**

Respondents reserve their due process and lawful rights to amend this pleading to assert any additional Counterclaims or Third-Party Claims, and add additional new parties, that may become apparent through discovery or otherwise.

**WHEREFORE**, Respondents seek an award:

(i)     dismissing all claims asserted by Claimant with prejudice;

(ii)    of damages against Claimant on the First Counterclaim in an amount to be established at the hearing of this matter, but no less than $50,000,000.00 [Fifty Million U.S. Dollars];

(iii)   against Claimant on the Second Counterclaim, declaring:

   a. the removals and appointments purportedly made to the Foundation Council and Board of Claimant on October 14, 2017 are null and void;

   b. Fintiklis, is not an authorized representative of Claimant, had no authority to issue the Notice of Default, and consequently, the Notice of Default is null and void;

   c. any termination of the HMA authorized by Fintiklis or other persons purportedly appointed to the Foundation Council and the Board of Claimant during the October 14, 2017 Meeting is null and void;

   d. the claims fraudulently asserted by Claimant in this Arbitration Proceeding are *ultra vires* and null and void.

(iv)    against Claimant on the Third Counterclaim, declaring:

   a. no Event of Default exists under the HMA;

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

    b.  Claimant's Notice of Default is improper and ineffective under the HMA; and

    c.  the claims fraudulently asserted by Claimant in this Arbitration Proceeding are ultra vires and null and void.

(v)    of damages against Third-Party Respondents on its third-party claims in an amount to be established at the hearing of this matter, but no less than $50,000,000.00 [Fifty Million U.S. Dollars];

(vi)    of treble damages on the First and Second Third-Party Claims pursuant to 18 U.S.C. § 1964(c);

(vii)    of attorneys' fees and disbursements that Respondents have incurred in connection with this proceeding, including those available under 18 U.S.C. § 1964(c);

(viii)    against Hotel TOC Foundation on the Thirteenth Third-Party Claim, declaring that the events purporting to take place at the improperly-noticed October 14, 2017 meeting are null and void;

(ix)    against Claimant on the Fourth Counterclaim and against Hotel TOC Foundation, Fintiklis, Ithaca I, Ithaca II and Lundgren on the Fourteenth Third-Party Claim, declaring:

    a.  the actions taken by Fintiklis, Ithaca I and Ithaca II at the October 14, 2017 meetings violate the Consent to Bulk Sale Agreement;

    b.  the actions taken by Lundgren at the October 14, 2017 meetings violate the Lundgren Settlement Agreement;

    c.  Lundgren's ownership of more than 10 Units violates the Co-Ownership Regulations and HMA;

    d.  The Notice of Default issued by Fintiklis as the "authorized representative" of Claimant and Hotel TOC Foundation is null and void, as Fintiklis is not the authorized representative of Claimant or Hotel TOC Foundation; and

    e.  There has been no termination of the HMA, as any actions purporting to terminate it have been ultra vires and/or unauthorized.

(x)    against Claimant on the Fourth Counterclaim and against Hotel TOC Foundation, Fintiklis, Ithaca I, Ithaca II and Lundgren on the Fourteenth Third-Party Claim, permanently enjoining them from:

    a.  taking any further action on the basis of the authority to act on behalf of Claimant and/or Hotel TOC Foundation based on the October 14, 2017 meetings of Claimant and Hotel TOC Foundation;

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

     b.  taking any actions, including the vote of any Units, contrary to the interests of Operator in its maintenance of the Hotel, consistent with pre-existing contractual obligations; and

     c.  pursuing or taking any action to pursue the termination of the HMA on the basis of the actions at the October 14, 2017 meetings of Claimant or Hotel TOC Foundation.

(xi)    of costs of this proceeding, including the fees of the arbitration panel, against Claimant and Third-Party Respondents; and

(xii)   such other and further relief as the arbitrator deems appropriate.

Dated: New York, New York
       December 5, 2017

                   PRYOR CASHMAN LLP

                   By: _____

                     Todd E. Soloway
                     Perry M. Amsellem
                     Bryan T. Mohler
                     Marion R. Harris
                     7 Times Square
                     New York, New York 10036
                     (212) 421-4100

                     *Attorneys for Respondents, Counterclaimants and Third-Party Claimants*

73

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| MORGAN & MORGAN, P.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. _____ |
| | ) |
| TRUMP PANAMA HOTEL | ) **CONFIDENTIAL FILING** |
| MANAGEMENT LLC, and TRUMP | ) |
| INTERNATIONAL HOTELS | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants. | ) |

## EXHIBIT D TO VERIFIED COMPLAINT TO ENJOIN ARBITRATION (ICC'S JAN. 2, 2018 LETTER TO PLAINTIFF)

**YOU ARE IN POSSESSION OF A CONFIDENTIAL FILING FROM THE CHANCERY COURT OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY.**

**If you are not authorized by Court order to view or retrieve this document read no further than this page. You should contact the following persons:**

**VENABLE LLP**

*/s/ Daniel A. O'Brien*
Jamie L. Edmonson (No. 4247)
Daniel A. O'Brien (No. 4897)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Tel.: 302.298-3535
Fax: 302.298-3550
jledmoson@venable.com
daobrien@Venable.com

**Pursuant to Rule 5.1(d)(2) a public version in not required to be filed.**

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

# Exhibit D

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY THE COURT.



**INTERNATIONAL COURT OF ARBITRATION** | **INTERNATIONAL CENTRE FOR ADR** | **LEADING DISPUTE RESOLUTION WORLDWIDE**

2 January 2018/cfa/mwr

**23149/MK**

HOTEL TOC, INC. (Panama) vs/ 1. TRUMP PANAMA HOTEL MANAGEMENT LLC (U.S.A.)
2. TRUMP INTERNATIONAL HOTELS MANAGEMENT, LLC (U.S.A.)

| | | |
|---|---|---|
| Counsel in charge of the file: Marek Krasula | (Tel: | +1 646 699 5704) |
| Deputy Counsel: Mary Katherine Wagner | (Tel: | +1 646 699 5707) |
| | (Fax: | +1 212 221 1295) |
| | (Email: | ica9@iccwbo.org) |

Messrs. Joshua D. Bernstein / Darryl R. Graham
Mmes. Kathleen M. Prystowsky / Vanessa I. Garcia
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, NY 10103
U.S.A.

*By email: joshua.bernstein@akerman.com; darryl.graham@akerman.com;*
*kathleen.prystowsky@akerman.com; vanessa.garcia@akerman.com*

Mr. Jose Carrizo
MORGAN & MORGAN
MMG Tower, 23rd Floor
Avenue Paseo del Mar, Costa del Este
Panama City
Panama

*By email: jose.carrizo@morimor.com*

Messrs. Perry M. Amsellem / Todd Soloway
Mr. Brian T. Mohler / Ms. Marion R. Harris
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
U.S.A.

*By email: pamsellem@pryorcashman.com; tsoloway@pryorcashman.com;*
*bmohler@pryorcashman.com; mharris@pryorcashman.com*

Mr. Orestes Fintiklis
520 W. Ave #1502
Miami Beach, FL 33139
U.S.A.

*By FedEx*

Mr. Gary Lundgren
c/o Griselda L. Perez, Board of Directions of P.H. TOC
5th Floor, Office Tower, Calle Punta Colón
Punta Pacífica, Ciudad de Panamá
República de Panamá

*By DHL*
*.../...*

INTERNATIONAL CHAMBER OF COMMERCE (ICC)
INTERNATIONAL COURT OF ARBITRATION                                    www.iccarbitration.org

HEADQUARTERS | ASIA OFFICE | BRAZIL OFFICE | NORTH AMERICA OFFICE
33-43 avenue du Président Wilson | Suite 2, 12/F Fairmont House | in affiliation with SCIAB LTDA. | in affiliation with SICANA, Inc.
75116 Paris | 8 Cotton Tree Drive | rua Surubim, 504, Brooklin Novo | 140 East 45th Street, Suite 14C
France | Central, Hong Kong | CEP 04571-050, Sao Paulo | New York, NY 10017, USA
T +33 (0)1 49 53 28 28 | T +852 3607 5600 | Brazil | T +1 646 699 5704
F +33 (0)1 49 53 29 33 | F +852 2523 1619 | T +55(11) 3040-8830 | F +1 212 221 1295
E arb@iccwbo.org | E ica8@iccwbo.org | E ica10@iccwbo.org | E ica9@iccwbo.org

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY THE COURT.

**23149/MK**                                                                  **Page 2**

ITHACA CAPITAL INVESTMENTS I, S.A.
2nd Floor, Humboldt Tower
East 53rd Street, Urb. Marbella
Panama
                                                                              *By DHL*

ITHACA CAPITAL INVESTMENTS II, S.A.
2nd Floor, Humboldt Tower
East 53rd Street, Urb. Marbella
Panama
                                                                              *By DHL*

MORGAN & MORGAN
MMG Tower, 23rd Floor
Ave. Paseo del Mar, Costa del Este
Ciudad de Panamá
República de Panamá
                                                                              *By DHL*

OWNERS MEETING OF THE P.H. TOC
Torre Global Bank
Calle 50 & Calle 58, Este Oficina 3501-Piso 35
Ciudad de Panamá
República de Panamá
                                                                              *By DHL*

HOTEL TOC FOUNDATION
Attn: Foundation Council Members
Real Property 234,240, Property Section
Panama City 8708
Panama
                                                                              *By DHL*

Mr. ZacGary Lundgren
Trump Ocean Club
Office Wing Floor #5
Panama City
Panama
                                                                              *By DHL*

Dear Mesdames and Sirs,

The Secretariat acknowledges receipt of the following correspondence:

- Respondents' correspondence dated 26 December 2017, a copy of which is enclosed for all concerned;

- Claimant's correspondence dated 27 December 2017, a copy of which was sent directly to Respondents and is enclosed for the Additional Parties;

- Respondents' correspondence dated 29 December 2017, a copy of which was sent directly to Claimant and is enclosed for the Additional Parties; and

- Claimant's correspondence dated 29 December 2017, a copy of which was sent directly to Respondents and is enclosed for the Additional Parties.

                                                                              .../...

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY THE COURT.

**23149/MK**                                                                                    **Page 3**

**Answer to the Request for Joinder**

According to the information provided by our courier service, Additional Parties 1, 2, 3, 4, 5, 6 and 8 received our correspondence dated 21 December 2017 enclosing *inter alia* the Request for Joinder on 26 December 2017. As such, the 30-day time limit for said Additional Parties to submit their Answers or any request for an extension of time to submit their Answers expires on **25 January 2018** (Article 5(1)).

We remind the Additional Parties to send us **23** copies of their Answers, together with an electronic version.

We refer to our aforementioned correspondence, by which we notified the Request for Joinder to Additional Party 7 at the following address:

HOTEL TOC FOUNDATION
Attn: Foundation Council Members
Real Property 234,240, Property Section
Panama City 8708
Panama

We have been informed by our courier service that delivery of said correspondence failed due to "*[a]ddress information needed*". We enclose the delivery exception receipt in this regard.

Please provide us by **5 January 2018** with an alternative address to which notification may be made to Additional Party 7, together with a fax number and email address, as well as the name of a contact and a telephone number.

Upon receipt of such information, the Secretariat will reattempt delivery of its aforementioned correspondence to Additional Party 7.

**Caption**

We refer to our aforementioned correspondence and look forward to receiving the parties' comments on which caption should be used within the time limits granted, *i.e.* by **22 January 2018** for Claimant and Respondents and by **25 January 2018** for Additional Parties 1, 2, 3, 4, 5, 6, and 8.

Additional Party 7 will be invited to provide its comments in its Answer or any request for an extension of time for submitting its Answer, *i.e.* within **30 days** from its receipt of the Request for Joinder.

We remind the parties that failing receipt of comments from all parties, the caption will be the following:

HOTEL TOC, INC. (Panama) vs/ **1.** TRUMP PANAMA HOTEL MANAGEMENT LLC (U.S.A.) **2.** TRUMP INTERNATIONAL HOTELS MANAGEMENT, LLC (U.S.A.) vs. **1.** Orestes Fintiklis (Cyprus) **2.** Gary Lundgren (Panama) **3.** ITHACA CAPITAL INVESTMENTS I, S.A. (Panama) **4.** ITHACA CAPITAL INVESTMENTS II, S.A. (Panama) **5.** MORGAN & MORGAN (Panama) **6.** OWNERS MEETING OF THE P.H. TOC (Panama) **7.** HOTEL TOC FOUNDATION (Panama) **8.** ZacGary Lundgren (Panama)

We also remind Claimant and Respondents that any pleas pursuant to Article 6(3) of the Rules should be submitted by **22 January 2018**.

**Constitution of the Arbitral Tribunal**

All of Claimant's and Respondents' comments on Ms. Fanelli's submission dated 13 December 2017 are duly noted and will be submitted to the Court in due course. We kindly invite Claimant and Respondents to refrain from submitting any further comments in this regard at this time.

.../...

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY THE COURT.

**Confidentiality**

Claimant refers to Article 22(3) of the Rules and *"requests that the ICC issues an Order directing Respondents to cease and desist any additional and further communications (of any kind) to non-parties to this Arbitration regarding this proceedings and the facts and allegation made therein by the Parties and, more specifically, to maintain the confidentiality of this proceedings"*.

Under Article 22(3), *"[u]pon the request of any party, the arbitral tribunal may make orders concerning the confidentiality of the arbitration proceedings"* (emphasis added). The Secretariat will transmit Claimant's request and comments to the arbitral tribunal once fully constituted.

**Reply**

We refer to our aforementioned correspondence and look forward to receiving Claimant's Reply within the time limit granted, *i.e.* by **8 January 2018** (Article 5(6)).

**Representation**

We remind the Additional Parties, if they are represented by counsel, to provide the relevant contact details.

**Communication with the Secretariat**

Finally, we remind the Additional Parties to provide their email addresses (or fax numbers if email is not available), as the Secretariat generally transmits correspondence by email.

Yours faithfully,

Marek Krasula
Counsel
International Court of Arbitration® | International Chamber of Commerce
SICANA Inc.

encl.   – Respondents' correspondence dated 26 December 2017
        - Claimant's correspondence dated 27 December 2017
          *(for the Additional Parties by FedEx/DHL only)*
        - Respondents' correspondence dated 29 December 2017
          *(for the Additional Parties by FedEx/DHL only)*
        - Claimant's correspondence dated 29 December 2017
          *(for the Additional Parties by FedEx/DHL only)*
        - Delivery exception receipt of correspondence dated 21 December 2017 to Additional Party 7

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY THE COURT.

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| MORGAN & MORGAN, P.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. _____ |
| | ) |
| TRUMP PANAMA HOTEL | ) **CONFIDENTIAL FILING** |
| MANAGEMENT LLC, and TRUMP | ) |
| INTERNATIONAL HOTELS | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants. | ) |

**EXHIBIT E TO VERIFIED COMPLAINT TO ENJOIN ARBITRATION
(PLAINTIFF'S JAN. 16, 2018 LETTER TO ICC)**

**YOU ARE IN POSSESSION OF A CONFIDENTIAL FILING FROM THE
CHANCERY COURT OF THE STATE OF DELAWARE IN AND FOR
NEW CASTLE COUNTY.**

**If you are not authorized by Court order to view or retrieve this document read
no further than this page.  You should contact the following persons:**

**VENABLE LLP**

*/s/ Daniel A. O'Brien*
Jamie L. Edmonson (No. 4247)
Daniel A. O'Brien (No. 4897)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Tel.: 302.298-3535
Fax: 302.298-3550
jledmoson@venable.com
daobrien@Venable.com

**Pursuant to Rule 5.1(d)(2) a public version in not required to be filed.**

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

# Exhibit E

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY THE COURT.



EFiled: Jan 16 2018 05:17PM EST
Transaction ID 61573970
Case No. 2018-0031-

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MORGAN & MORGAN, P.A.,                    )
                                                )
                  Plaintiff,                    )
                                                )
        v,                    )    C.A. No. _____
                                                  )
TRUMP PANAMA HOTEL MANAGEMENT )
LLC, and TRUMP INTERNATIONAL )
HOTELS MANAGEMENT, LLC,                    )
                                                )
                Defendants.                    )
                                                )

## UNSWORN FOREIGN DECLARATION
## OF JOSE CARRIZO

I, Jose Carrizo, hereby declare, in accordance with the Delaware Uniform Unsworn Foreign Declarations Act, 10 *Del. C.* § 5351 *et seq.*, as follows:

1.       I am a partner in the law firm of Morgan & Morgan, P.A. ("Morgan & Morgan"). I am authorized to make this verification on behalf of Morgan & Morgan, the plaintiff in this matter.

2.       I have reviewed the Verified Complaint in this action (the "Complaint").

3.       To the extent the allegations of the Complaint concern the actions of Morgan & Morgan, I know the allegations to be true and correct.

4.     To the extent the allegations of the Complaint concern the actions of parties other than Morgan & Morgan, I believe the allegations to be true and correct.

5.     I declare, under penalty of perjury under the law of Delaware, that the foregoing is true and correct and that I am physically located outside of the geographical boundaries of the United States, Puerto Rico, the United States Virgin Islands, and any territory or insular possession subject to the jurisdiction of the United States.

Executed on this 15th day of January, 2018, in Panama City, Republic of Panama.



Jose Carrizo

2

EFiled: Jan 16 2018 05:17PM EST
Transaction ID 61573970
Case No. 2018-0031-

SUPPLEMENTAL INFORMATION PURSUANT TO RULE 3
OF THE RULES OF THE COURT OF CHANCERY

The information contained herein is for the use by the Court for statistical and administrative purposes only. Nothing stated herein shall be deemed an admission by or binding upon any party.

1. Caption of Case: **MORGAN & MORGAN, P.A. v. TRUMP PANAMA HOTEL MANAGEMENT LLC and TRUMP INTERNATIONAL HOTELS MANAGEMENT, LLC**

2. Date filed: **January 16, 2018**

3. Name and address of counsel for plaintiffs:
**Jamie L. Edmonson (#4247), Daniel A. O'Brien (#4897)
Venable LLP, 1201 North Market Street, Suite 1400
Wilmington, Delaware 19801**

4. Short statement and nature of claim asserted:
**This action seeks to preliminarily and permanently enjoin Defendants, two Delaware limited liability companies, from pursuing arbitration against Plaintiff before the International Court of Arbitration of the International Chamber of Commerce because there exists no agreement to arbitrate between Plaintiff and Defendants.**

5. Substantive field of law involved (check one):
| | | |
|---|---|---|
| ____Administrative law | ____Labor law | ____Trusts, Wills and Estates |
| **X** Commercial law | ____Real Property | ____Consent trust petitions |
| ____Constitutional law | ____348 Deed Restriction | ____Partition |
| ____Corporation law | ____Zoning | ____Rapid Arbitration (Rules 96,97) |
| ____Trade secrets/trade mark/or other intellectual property | | |

6. Related cases, including any Register of Wills matters (this requires copies of all documents in this matter to be filed with the Register of Wills): **N.A.**

7. Basis of court's jurisdiction (including the citation of any statute(s) conferring jurisdiction):
**10 Del. C. § 5702; 10 Del. C. § 5703; 10 Del. C. § 341; 10 Del. C. § 6501; 6 Del. C. § 18-105.**

8. If the complaint seeks preliminary equitable relief, state the specific preliminary relief sought.
**This action seeks an order preliminarily enjoining Defendants from pursuing claims against Plaintiff in an arbitration proceeding.**

9. If the complaint seeks a TRO, summary proceedings, a Preliminary Injunction, or Expedited Proceedings, check here **X** . (If #9 is checked, a Motion to Expedite must accompany the transaction.)

10. If the complaint is one that in the opinion of counsel should not be assigned to a Master in the first instance, check here and attach a statement of good cause. **X**

_/s/ Jamie L. Edmonson_
Jamie L. Edmonson (#4247)

## STATEMENT OF GOOD CAUSE

The undersigned counsel have reviewed the Verified Complaint to Enjoin Arbitration and do not believe that this action is suitable for assignment to a Master in Chancery. This action seeks preliminary and injunctive relief barring the prosecution of a non-arbitrable dispute before the International Court of Arbitration of the International Chamber of Commerce. Given the nature of the claims asserted and relief requested, counsel believe that this action should proceed directly before the Chancellor or a Vice Chancellor of the Court.

**VENABLE LLP**

OF COUNSEL:

Edward P. Boyle
Kevin J. White
Rockefeller Center
1270 Avenue of The Americas, 24th Floor
New York, New York 10020
Telephone: 212-307-5500
Facsimile: 212-307-5598
epboyle@venable.com
kjwhite@venable.com

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (#4247)
Daniel A. O'Brien (#4897)
1201 North Market Street
Suite 1400
Wilmington, Delaware 19801
Telephone: 302-298-3535
Facsimile: 302-298-3550
jledmonson@venable.com
daobrien@venable.com

*Attorneys For Plaintiff Morgan & Morgan, P.A.*

EFiled: Jan 16 2018 05:17PM EST
Transaction ID 61573970
Case No. 2018-0031-

# VENABLE LLP

1201 NORTH MARKET STREET   SUITE 1400   WILMINGTON, DE 198
T 302.298.3535   F 302.298.3550   www.Venable.com

January 16, 2018

Jamie L. Edmonson

T 302.298.3520
F 302.298.3550
jledmonson@venable.com

Register in Chancery
Court of Chancery
New Castle County Courthouse
500 North King St., Suite 11400
Wilmington, DE 19801-3734

Re:   **Morgan & Morgan, P.A. v. Trump Panama Hotel Management LLC, et al.**

Dear Sir/Madam:

This firm represents Plaintiff Morgan & Morgan, P.A. ("Plaintiff"), a Panamanian law firm, in the above-referenced case.  Contemporaneously with this letter, Plaintiff has filed its Verified Complaint to Enjoin Arbitration (the "Complaint").

By way of the Complaint, Plaintiff seeks a declaratory judgment from the Chancery Court that Plaintiff is not subject to any agreement to arbitrate any dispute with Trump Panama Hotel Management LLC ("Trump Panama") or Trump International Hotels Management, LLC ("Trump International", together with Trump Panama, "Trump") and that Plaintiff is not bound to arbitrate any of the claims Trump has asserted against it in an arbitration pending before the International Court of Arbitration of the International Chamber of Commerce (the "Arbitration").  Plaintiff also seeks a preliminary and permanent injunction enjoining Trump from pursuing any claim against Plaintiff in the Arbitration. Exhibits A-E to the Complaint (collectively, the "Exhibits") include Arbitration related documents that contain confidential information.  Therefore, I certify that the filing under seal of the Exhibits complies with Chancery Court Rule 5.1(c).

# VENABLE LLP

Register in Chancery
January 16, 2018
Page 2

I am available at the Court's convenience should there be any question in this regard.

Respectfully,

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (No. 4247)

Words: 181